J-A04043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:<br>IN THE ADOPTION OF:<br>S.R.M., A MINOR,<br><br><br>Appellee<br><br><br><br>APPEAL OF: R.M.B., FATHER | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 991 WDA 2015 |

Appeal from the Order Entered May 12, 2015
In the Court of Common Pleas of McKean County
Orphans' Court at No(s): 42-12-0259

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 12, 2016**

R.M.B. ("Father") appeals from the order entered on May 12, 2015, granting the petition filed by the McKean County Children and Youth Services ("CYS" or the "Agency") to involuntarily terminate Father's parental rights to his daughter, S.R.M. ("Child").[1]  We affirm.

The orphans' court set forth the relevant history of this case in its memorandum.  Orphans' Court Memorandum, 5/12/15, at 1–9.  We adopt the orphans' court's recitation of facts for purposes of this appeal; we set

---

[1]  On May 11, 2015, the orphans' court involuntarily terminated the parental rights of T.A.M. ("Mother").  Mother has not filed an appeal, and she is not a party to this appeal.

forth only those facts, as found by the orphans' court, that are necessary to understand our disposition.

Child was born in March of 2008 and initially resided with Mother and Father. Approximately nine months after Child's birth, Mother left Child in the care of Father and moved to Florida, stating that she was unable to be a parent. N.T., 4/10/15, at 112; Orphans' Court Memorandum, 5/12/15, at 1. Child then lived with Father, who has a history of mental illness, and Father's grandmother, S.B. ("Great-Grandmother"). When Father attempted suicide, CYS assumed custody of Child, who was then nineteen months old, and placed her in the care of Father's aunt, S.T. ("Great-Aunt"), and uncle, G.T. (collectively "the T.s"), on October 27, 2009. *Id*. Child was adjudicated dependent on February 9, 2010.

Father resumed living with Great-Grandmother and had supervised visitation with Child; Father also was homeless at times. Orphans' Court Memorandum, 5/12/15, at 3. Father had minimal compliance with court-ordered recommendations. He was incarcerated in early 2011, released that spring, and pled guilty on June 30, 2011, to public drunkenness, a weapon charge, possession of marijuana, and criminal mischief. The court imposed a probationary sentence. *Id*.

Once again, Father lived with Great-Grandmother and resumed supervised visits with Child, with whom he formed a bond. Orphans' Court Memorandum, 5/12/15, at 3–4. He was arrested on September 7, 2011,

related to a stabbing incident over a bottle of vodka, and he was incarcerated. A jury found him guilty of two counts of aggravated assault and one count each of simple assault and recklessly endangering another person. On July 30, 2012, the court imposed an aggregate sentence of five and one-half to eleven years in a state correctional facility. Father's earliest release date is March 4, 2017, and his maximum release date is September 7, 2022. *Id*. at 4. On appeal, this Court affirmed Father's sentence. *Id*.

Meanwhile, Child was living with the T.s and occasionally visiting Father at prison. Child allegedly formed a bond with the T.s. CYS filed a petition to terminate parental rights in December 2012, and the T.s were listed as prospective adoptive parents. In the summer of 2013, Great-Aunt was found intoxicated in a local Wal-Mart parking lot. Orphans' Court Memorandum, 5/12/15, at 6. When Great-Aunt refused to follow through with CYS concerns, Child was removed from the T.s' home and placed in foster care on October 19, 2013, with M.C. and V.C. ("the C.s"), where she resides to this day. Initially, because the C.s were not interested in a long-term-placement option, CYS withdrew its termination petition as adoption no longer was an option. Eventually, the C.s capitulated and agreed to adopt Child. However, they are not willing to transport Child to the state correctional facility to visit with Father. *Id*. at 6–7.

On October 28, 2014, CYS filed a second petition for the involuntary termination of the parental rights of Father and Mother. The orphans' court

held a hearing on January 5, 2015, where the current CYS caseworker, Brittany Falconi, testified, as did Dr. Allen Ryen, who performed a bonding assessment and was qualified as an expert. The hearing continued on April 10, 2015, where Jeanie Bailey, Child's former CYS caseworker from March 2010 until November 2011, and prospective adoptive parents, the C.s, testified. N.T., 4/10/15, at 8-9, 49, 82. Father also testified on his own behalf.

Ms. Falconi testified that Child is comfortable in the C.s' home, is bonded with them, and loves them. N.T., 1/5/15, at 34–35. She offered that the involuntary termination of Father's parental rights would best serve Child's developmental, physical and emotional needs, and welfare. *Id.* at 41. Ms. Falconi testified that it was not in Child's best interest to prolong foster care, given the length of time Child has been in placement, because Father's release date and his situation upon release are unknown, and in light of the C.s' willingness to adopt Child. *Id.* Ms. Falconi opined that the termination of Father's parental rights and Child's adoption by the C.s would provide Child with permanency. *Id.* She acknowledged that Child has a relationship with Father. *Id.* at 42. Ms. Falconi stated that the C.s provide Child with comfort, security, and stability. *Id.*

The orphans' court terminated Father's parental rights on May 12, 2015, pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). On June 11, 2015, Father timely filed a notice of appeal along with a concise statement

of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), in which he raised nine issues for review.

In his brief on appeal, Father raises the following single issue:

> Whether the Court below erred in finding that termination of the parental rights of [Father] would best serve the needs and welfare of [Child] under 23 Pa.C.S. § 2511(a)(5), 23 Pa.C.S. § 2511(a)(8) and 23 Pa.C.S. § 2511(b), including that that determination was against the weight of the evidence and that there was not sufficient evidence to support that conclusion.

Appellant's Brief at 5 (footnote omitted).[2]

Father argues that there was insufficient evidence to support a finding that severing his bond with Child served Child's needs and welfare. Father further avers that Dr. Ryen's expert testimony indicated that severing the bond between Father and Child would have devastating effects on Child. Citing *In re E.M.*, 620 A.2d 481 (Pa. 1993), Father asserts that the termination of his parental rights cannot be sustained.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial

---

[2] In his brief, Father states that he has consolidated the first eight claims listed in his Pa.R.A.P. 1925(b) statement into this single issue.

court made an error of law or abused its discretion. ***Id.***; ***In re R.I.S.***, 614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, 613 Pa. 371, 455, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

***In re I.E.P.***, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of

the truth of the precise facts in issue.'" ***Id***. (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)). Moreover, this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). Order, 5/12/15, at 1–2.[3] Section 2511(a)(2), (5), (8), and (b) provide as follows:

> **§ 2511. Grounds for involuntary termination**
>
> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the

---

[3] On the second page of its order, the orphans' court apparently made a clerical error in citing 23 Pa.C.S. § 2511(a)(1), which was not quoted in the order. Further, although the trial court did not cite section 2511(b) in its order, it discussed and considered this section in its memorandum that accompanied the order. Orphans' Court Memorandum, 5/12/15, at 11.

conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511. This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), the focus is on the child. **In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In his brief, Father does not discuss Section 2511(a). ***See Wirth v. Commonwealth***, 95 A.3d 822, 837 (Pa. 2014) (holding that "[w]here an appellate brief fails to . . . develop an issue in any . . . meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him.") (internal quotations omitted); ***see also*** Pa.R.A.P. 2119(a) (providing that appellate briefs must contain "such discussion and citation of authorities as are deemed pertinent"). Therefore, we find that Father has waived any challenge to the involuntary termination of his parental rights under Section 2511(a).[4]

Even if Father had preserved this challenge, we would find that there is competent evidence in the record to support the involuntary termination of his parental rights under Subsection 2511(a)(2). This Court has stated that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.*** at 340.

---

[4] Father also waived any challenge regarding the orphans' court's consideration of an open adoption in this matter by his failure to develop any argument concerning that doctrine. ***See Lackner v. Glosser***, 892 A.2d 21, 29–30 (Pa. Super. 2006) (Appellate arguments that are not appropriately developed are waived).

In ***Adoption of S.P.***, our Supreme Court instructed that:

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

***Adoption of S.P.***, 47 A.3d at 828.

After re-visiting its decision in ***In re: R.I.S.***, 36 A.3d 567, 572 (Pa. 2011), regarding incarcerated parents, the Supreme Court stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). [***See In re:***] ***E.A.P.***, 944 A.2d [79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by [the] mother's repeated incarcerations and failure to be present for [the] child, which caused [the] child to be without essential care and subsistence for most of her life and which cannot be remedied despite [the] mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, orphans' courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

***Adoption of S.P.***, 47 A.3d at 830–831 (some internal citations omitted).

Here, the orphans' court found that due to Father's extended period of incarceration and the possibility that he will not be released on his minimum date, and that he will be unable to provide proper parental care and control even after he is released from incarceration, competent evidence supported the involuntary termination of Father's parental rights under Section 2511(a)(2). Orphans' Court Memorandum, 5/12/15, at 19. Thus, we would find that the competent evidence in the record supports the orphans' court's decision and that the orphans' court did not abuse its discretion in terminating Father's parental rights. *Adoption of S.P.*, 47 A.3d at 826–827.

Next, we review the termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(b). Our Supreme Court has stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Father asserts that Dr. Ryen's expert testimony indicated Father has a close, primary, secure bond with Child. Father's Brief at 24–25. Father

avers that Dr. Ryen testified that he was opposed to the involuntary termination of Father's rights and that such termination would be harmful to Child. *Id*. at 25; N.T., 4/10/15, at 113, 115–116, 121.

The orphans' court summarized Dr. Ryen's testimony as follows:

> Dr. Allen Ryen testified at the termination hearing [by telephone,] and his reports were admitted as exhibits (Exhibits #7 and #8). Dr. Ryen has been qualified as an expert regarding bonding and bonding issues numerous times in McKean County and many other counties in Northwestern Pennsylvania. He has extensive training and experience regarding childhood development and the effects of changes in custody and child dependency. He testified that there is a primary and secure bond between [Child] and . . . Father. He observed the interaction between [Child] and Father during a visit at Father's SCI [State Correctional Institution] facility. He described Father and [Child's] interaction as "downright wonderful and heartwarming." He concluded that it was in [Child's] interests to have Father's rights terminated as Father will be unavailable for an unknown and significant period of time; and, at some point, [Child] will "examine her rescue fantasy and find that it isn't realistic." He indicated that a child needs a positive and secure environment to develop in; and, [Child] has that type of environment with the [C.s]. However, he also testified that "I would certainly not support terminating contact and support with . . . Father." He indicated that there are three options: 1) open adoption; 2) Subsidized Legal Custodianship; and, 3) involuntary termination of parental rights with no continued contact with Father. He testified that option 3, termination with no continued contact with Father: "is the last thing that I would want to see."

Orphans' Court Memorandum, 5/12/15, at 8–9.

Dr. Ryen opined that Child's bond with Father likely remained due to a "rescue fantasy." N.T., 1/5/15, at 78. He explained that such fantasies exist in children where there is a disruption of the primary bond due to incarceration of a parent or divorce. The Child forms a fantasy, as in this

case, believing "my father is going to come home and we're going to live together happily ever after." *Id*. at 78–79. Dr. Ryen clarified that the rescue fantasy becomes part of the child's security, and it helps the child "to maintain a sense of intactness and stability and safety." *Id*. at 79.

Dr. Ryen testified that Father self-reported his diagnoses of borderline personality disorder, bi-polar affective disorder with attention deficit disorder, a history of drug use, and a suicide attempt. N.T., 1/5/15, at 81. The expert explained the significance of these mental illnesses and their impact on parenting, as follows:

> [T]hese [illnesses] . . . all represent a risk to [Father's] ability to parent a child, his ability to have a relationship with any human being for that matter. Um—you know a[n] . . . affective disorder untreated ah—has some very negative repercussions . . . upon the adjustment . . . of anybody who is going to be dependent on him. . . .
>
> * * *
>
> Personality Disorders on the other hand tend to be rather enduring. They tend to be rather ah—resistant to treatment . . . .
>
> * * *
>
> [P]eople with Borderline Personality Disorders for example[, their] relationships tend to be characterized by you know instability and change. You know, having you know intense need with intense emotional swings and sometimes to a point of psychosis but, you know, they tend not to go away without an awful lot of very good treatment.
>
> What I'm saying in general is that there are a number of risk factors that [Father] shared with me you know each of them has implication for his stability into the future and you know combined or maybe multiplicative sorts of implications and I'm

simply concluding that his long term stability is—has a worst prognosis by virtue of these factors that [Father] shared with me.

N.T., 1/5/15, at 81–84.

Dr. Ryen testified that while there is affection between Father and Child, there also is great affection between Child and the C.s. N.T., 1/5/15, at 76, 91–92. Dr. Ryen opined that he preferred Child in an open-adoption situation; he also noted that Father realistically might not be able to assume parental duties before Child reaches eighteen years of age. *Id*. at 89–90, 100–103, 114–122. Lastly, the expert recognized that the involuntary termination of Father's parental rights would provide permanency for Child. *Id*. at 93.

In conducting a bonding analysis, the orphans' court is not required to use expert testimony but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Furthermore, it is appropriate to consider a child's bond with the foster parents, as well. *T.S.M.*, 71 A.3d at 268. In *T.S.M.*, our Supreme Court set forth the process for evaluating the existence of a bond between a parent and a child and reiterated the importance of the orphans' court's focus on concerns of the quality of the attachment and the availability of an adoptive home. The Supreme Court stated the following:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family.

As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See*, *e.g.*, *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)] (holding that statutory criteria of whether [the] child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

* * *

[The Adoption and Safe Families Act of 1997, P.L. 105-89] ASFA[,] was enacted to combat the problem of foster care drift, where children . . . are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. *See In re R.J.T.*, 9 A.3d at 1186; *In re Adoption of S.E.G.*, [901 A.2d 1017, 1019 (Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. *See*, 42 Pa.C.S. § 6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

*T.S.M.*, 71 A.3d at 268–269.

The existence of a bond or attachment between parent and child will not necessarily result in the denial of a termination petition. *In re T.A.M.*,

33 A.3d 95, 103 (Pa. Super. 2011); *In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). This Court will not prolong instability for children when it is clear that their biological parents are unable to provide for their basic needs in the near future. *T.S.M.*, 71 A.3d at 270.

Although he was not in favor of termination of Father's parental rights, Dr. Ryen testified, "Right now we've got a very young needy child who needs to belong to somebody and something. She needs a personal and a family identity that's realistic on a daily . . . basis." N.T., 1/5/15, at 118. Dr. Ryen acknowledged that the orphans' court "may not have a choice" because termination of Father's parental rights would provide Child with permanency. *Id.* at 121.

In the present matter, the orphans' court adequately considered the developmental, physical, and emotional needs of Child. The court thoroughly considered Child's bond with Father along with the effect of severing that bond. The orphans' court also provided an explanation concerning why its termination decision was not based on matters outside of Father's control, including housing and lack of employment, as Father claimed. Rather, the orphans' court based its decision on Father's current incarceration and his inability to provide proper parental care and control when released from incarceration. Orphans' Court Memorandum, 5/12/15, at 19. Although there was evidence of a bond between Child and Father, the

court properly determined that it was in Child's best interest to sever that bond. *Id.*; *In re: T.S.M.*, 71 A.3d at 268–269.

Father posits that the instant case is distinguishable from *In re D.C.D.*, 105 A.3d 662 (Pa. 2014), and *T.S.M.*, the cases upon which the orphans' court primarily relied. Father also urges that these facts are distinguishable from the facts in *Adoption of S.P.* We find no merit to this argument. The orphans' court properly relied on *D.C.D.* and *Adoption of S.P.* to set forth our Supreme Court's instructions regarding the involuntary termination of parental rights of an incarcerated parent. Likewise, the orphans' court's reliance on *T.S.M.* in setting forth the High Court's guidance, when there is evidence of a bond between a child and a parent but it is in the best interest of the child to sever that bond, was relevant.

Finally, we reject Father's suggestion that *In re E.M.* is apt herein. Father's Brief at 25. In *E.M.*, the orphans' court involuntarily terminated the parental rights of a mentally retarded mother to her two sons pursuant to 23 Pa.C.S. § 2511(a)(2). Our Supreme Court found that the psychological evaluations recommended by the agency's expert witness had not been performed, and the bond between the mother and the children should have been more fully explored. Thus, our Supreme Court reversed and remanded the matter for a re-evaluation. *E.M.*, 620 A.2d at 485.

In the case *sub judice*, the orphans' court found that Child loves Father. N.T., 4/10/15, at 141. The orphans' court also found that Child

loves the C.s. ***Id.*** As we explained in ***Z.P.***, 994 A.2d at 1125, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." Indeed, we have stated that it "is appropriate to rely on past behavior rather than future promises." ***In re J.L.C.***, 837 A.2d 1247, 1254 (Pa. Super. 2003). A "parent's basic constitutional right to . . . the rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004). Because the orphans' court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the orphans' court's order involuntarily terminating Father's parental rights.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2016